May it please the Court, I'm Kimberly Watt with SB2-H on behalf of the Plaintiff's Appellants. We're here this morning on the Nursing Home Residents' Appeal of Orders Dismissing the Stroke Complaint in its Entirety, holding that the ADA claims failed to establish all of the 11th Amendment. I'm going to start by saying that you keep saying in your brief that on this due process issue that the notice of denial is conditional. What does that mean? Your Honor, these notices- Does that mean it's not clear? They were not clear. They're very confusing. These notices acted in two ways. Initially, the notices state that the Nursing Home recipients- So you're on your 14th Amendment claim, not your ADA claim? Yes, Your Honor. I just responded to the question. The notices purport to inform the Medicaid applicants that their application has been The notices also go on to say that they can be conditionally kept open if additional financial information is provided by a certain date. Don't they have a right to appeal that to court in Maryland? What happened was- Don't they have a right to appeal that to court in Maryland? They have a right to appeal the denials, but the confusing part of these notices is that it was kept open because they were told they could keep it open by providing this information by a certain date. When there was no response to the keeping it open, the plaintiffs would then appeal and the appeals were held untimely. By taking advantage of the option, denied an appeal, or add additional information, you forfeited your right to appeal. That's not made clear in the notices and that really needs to be made clear in the notices. Well, let's talk about your plaintiffs. Of the 11 of them, 5 are dead and 6 are now receiving Medicaid benefits, is that correct? That is correct, Your Honor, but as we argue in the brief, the claims survive the death of the plaintiffs under- That goes, sticking to the 14th Amendment claim, before you get to the 11th Amendment defense, your standing here is derivative. It's derivative of the actual complainants who would be beneficiaries of the Medicare payments, correct? That's correct, Your Honor. So to follow Judge Floyd's question, if one chunk are deceased and the other chunk are getting benefits, what's your standing here? That would seem to moot the issue. The ADA claim, I know- Forget about that for the time being, just stick with your 14th Amendment claim. On the 14th Amendment claim, I want to address that the defendants argued that, in the briefing, that it's axiomatic that deceased plaintiffs can't enjoy injunctive relief. I want to talk about, in the briefing we address the property rights issue and then under state law that does proceed. But what I really want to address is the effect of adopting defendant's position on injunctive relief, not surviving death. Well- I'm sorry, go ahead. You're not arguing capable of repetition but evading review here. I'm sorry? You're not arguing capable of repetition but evading review. I'm not arguing that, although in at least one of the plaintiffs, Mr. Winder, that is in fact an option. But you didn't argue that- I'm not. In your brief. So- I'm not. Help me understand why you have standing here. Isn't it true that when somebody dies, their estate or the recipient can still get paid by Medicaid for services that they received while they were alive? That is correct. And they're even allowed- And so if these people were denied or whatever improperly, or didn't have their eligibility determined, they're still entitled to receive that even though they're no longer alive. Isn't that correct? Where the recipient is entitled to receive it. That's correct. They are entitled to those Medicaid benefits until the date of the death. And you can file an application on behalf of a deceased person for the care that was received until their death for those three months. So that would take money out of the treasury, which the 11th Amendment would not permit. Except that plaintiffs in this case are not asking for a monetary relief. We are asking for the notice. In this case, there are multiple applications. There were initial applications, and then the applications were submitted- What relief does notice give any of the named complainants here? I don't understand how the notice helps out the deceased folks and the folks that are already getting Medicare benefits. I'm kind of lost as to what the claim is. There are multiple applications. There's a first application, and there's subsequent applications. In some cases, there were up to six applications. They were required to continue filing applications. The residents were required to continue filing applications. At some point, the state did approve some of the subsequent applications, but they issued these confusing notices regarding the earlier applications that led people to believe that their applications were still open. They acted duly. They said, give us more information, and you've been denied, which was very confusing. The relief that you want is for the state to properly process the applications for Medicaid. Isn't that correct? That is correct. We want the state- That's the injunctive relief that you want the state to do. That is correct. That is the prospective injunctive relief we want. And then they may or may not be entitled, but you want them to properly process that. How does this business with the asset verification program work? Does that something that occurs in an ongoing basis for nursing home residents, if you know? I'm confused by your question. Well, you've got an asset verification program where the state is required under state law to go and check the assets through some sort of computer program, I take it. That's correct. Is that right? In other words, like my mother was in the nursing home for a long time, would they have to go back every six months or something to check her assets? So Medicaid applications are re-evaluated every year. Medicaid beneficiaries are re-evaluated every year. So you do your application or subsequent applications. When they're approved, then every year on or around the date of the approval of the application, the state then re-evaluates and re-checks your assets, financial situation, to be sure that you still fall on your medical. So the people for whom Medicaid benefits have been approved, assuming they live a year, the state will then go back and is supposed to run the asset verification program for them again on the anniversary. Is that right? That is correct. And if the state doesn't do that, then it is not following its own Medicaid regulations or the federal regulations. That's correct. They're not following the federal regulations. So for those people for whom benefits have been applied, if the state's not doing the asset verification program, injunctive relief to require them to do that in the future would be appropriate. Is that your argument? That is correct. That's not actually a claim in this complaint, but that is... Well, if it's not a claim in the complaint, I mean, how can you argue it now? I was answering the question. I understand that. I understand part of it. Tell it. The Fourth Circuit decided a case some years ago called Kimball v. Solomon. Why wouldn't that apply with respect to all of your complainants that are deceased? Sorry, Your Honor, I'm not familiar with that case. It wasn't in the briefing. Okay. Well, with respect to the people who are receiving benefits, would you comment on the applicability of the Antracan case to that? The Antracan case... That's the one with the kids not getting dental care in South Carolina. Correct. In that case, the court clarified that you could not get an award of the remedial benefits that were found to be wrongfully withheld, and that's clear, and that's not what we're asking for. But it was held that an ancillary effect on the state treasury is acceptable. And that's what we have here. Is that your argument? I'm not even suggesting that... Yes. Okay. Requiring the state to use the asset verification system and to process applications in a timely fashion, and to give due process to elderly nursing home residents might, in the end, cost the state a little bit more money because they have to actually process these applications and process the first application. This is not a class action case. It was initially styled as a class action case, but at some point, in a motion to amend... So you're limited to the claims of the actual named complainants. That is correct, Your Honor, although it was originally styled as a class action complaint. Okay, so explain to me how future injunctive relief is relevant to them. Because we are asking for the... Specifically, we want that initial application to actually be reviewed and to send a notice that is effective and is not confusing. That notice was never received. The nursing home residents applied. They got confusing notices. They were informed that their applications would be kept open. They relied on that representation in the notice of denial, that their applications would be kept open. They provided this additional information. They then lost their appeal rights, which were held untimely because of keeping it open. And then a subsequent time, their later applications were approved. We want a decision on the original application. That's all administrative, correct? There's never been a proceeding in Maryland State Court. I don't believe so with these plaintiffs. But I can't be positive Ms. Hart may have had a proceeding in the state court. You've got two chunks of folks here. The ones that are deceased and the ones that are alive, but they're receiving Medicare benefits. So it would seem like that with regard to either group, there's a remedy in the Maryland State Courts that was never pursued. It's not required that the plaintiffs under these claims exhaust their administrative remedies. But furthermore, it was held that it was untimely. The appeals were untimely because of the confusing notice. That's a due process violation. So we're here asking that the state be required to fix their system so that the notices don't act in two ways. They don't act as a notice of denial and a request for information. That's confusing. With respect to the deceased people, am I reading your brief correct? I thought some of those people never got a ruling one way or the other. That's correct. Some of those people never did get a ruling one way or the other. And is that true of the alive people? Well, it wouldn't be true of the alive people because they've gotten their benefits. That's correct. It's true of the deceased people. And if we adopt the state's position that deceased people can't have injunctive relief, that's going to lead to an unpleasant result. That says that applications that are submitted after someone's death don't have to be treated with due process because there's no remedy. And then, to follow that down the line, if we have these elderly patients, and these are elderly ill, some of the most vulnerable population of our society, that the state doesn't necessarily have to treat these applications with due process because it's possible that these elderly ill people could pass away before decisions made and then there's no remedy. Right. But you've got a sovereign immunity issue here that you don't ... I mean, you're running out of time so you can use it as you want. But you don't have the sovereign immunity issue with respect to your ADA claim. That is correct. So why don't you talk to us a little bit about that? The court held that plaintiffs were seeking ... Oh, that's right. That's not it. Right. The court held that the plaintiffs did not allege any facts about their disability. That's just not correct. In fact, plaintiffs allege ... No, they didn't allege. What they say is the problem is causation. Paragraph 121 alleges that the plaintiffs require 24-hour nursing care. I understand that they're disabled, but what is it about their disability that caused them to be discriminated against? The Fourth Circuit has recognized three grounds for relief under the ADA. Deliberate ... Deliberate treatment. Yeah, stand where you are because they can't pick you up on the recorder otherwise. Deliberate unfairness, disparate impact, and failure to accommodate. And plaintiff's complaint alleges that ... There was disparate impact, that some applications were reopened and other applications were not reopened, and there's no way to know ... There's no standard for which applications are going to be opened and which ones are not going to be opened. And plaintiff's complaint specifically alleges that there were not reasonable accommodations made. The state did not use the AVP system like they're supposed to. The state didn't use secondary resources. To be confined to a nursing home needing 24-hour skilled care means that these residents can't leave the nursing home to go and track down five years' worth of bank accounts or insurance paperwork. People who have Alzheimer's might not even remember which banks they have accounts at. The state is required to use these accommodations, and they did not here. So, viewing the complaint in the light most favorable to the plaintiffs, as should be, it is clear from our complaint that there are allegations on failure to make reasonable accommodations. Which presupposes you've adequately alleged disability. Which we have alleged that these plaintiffs require 24-hour skilled nursing care  Let me ask you a separate question. I know you're out of time. You're going to have some rebuttal time. The district court ruled on the ADA claims in the alternative. And it ruled that the nursing homes were not the real party in interest to bring the civil rights claims under the ADA and the Rehabilitation Act. I don't see that you challenged that alternative ruling in your briefing. I would have to double check on that. Why don't you double check on that and you can tell us about that and your rebuttal time. Can I just say that the Tenth Circuit has determined that Sorry, I forgot. I'll adjust that. You write that down and you can tell us when you come back up. Thank you. Mr. Lapp. Good morning, your honors. May it please the court. I'm here to address the 11th Amendment sovereign immunity issues. And my colleague, Michael Bouye, is here to address the 12B6 issues. Regarding the 11th Amendment, the 11th Amendment sovereign immunity serves to bar the plaintiff's claims in federal court. In the Ex Parte Young exception, it's not available here. So do you agree that the nursing homes have the standing to bring the 14th Amendment claim? Either on behalf of deceased occupants or the ones that are still alive? We do not agree that they have standing to pursue the 4th Amendment claims for the deceased recipients. Did you make that argument in the district court? We did not. We made the claim or we moved to dismiss on the basis that they were moot. But we did not challenge the standing at that time as a result of For the plaintiffs who are deceased, they are not the personal representatives of the state. And that would be the only basis for which they could proceed. While they were alive, didn't they sign some sort of document that says the nursing home can apply for benefits from me? That's right. Doesn't that survive their death? No, that does not survive their death. What provincial law says, where does it say that in Maryland law that that doesn't survive their death? Under the Comar provisions and I believe in the Code of Federal Regulations. What section? The Comar provisions, it's Comar 10.01.04 and I believe it would be .12, so 10.01.04. And I believe the authorized representative provisions are in 12 of 10.01.04. And those provisions require that for a deceased individual, the action be, any effort to obtain Medicaid benefits be carried forward by the personal representative of the estate. And of course, the Even, do they have an obligation to continue to prosecute or process claims that were submitted before the death of the decedent? Well, the authorized representative No, does the department have an obligation to continue to process applications that were filed before the death? Yes, the department would continue to process applications from someone who is deceased, yes. So, if the nursing home filed the thing and the person died, the department would continue to process that until it determines whether they're entitled or not to benefits. Is that right? That is correct. Only if there were an appeal, an administrative appeal or subsequent to that, a judicial appeal, would that appeal have to be carried forward by the personal representative of the estate. But the application would still be processed by the department. Before either the deceased residents Was there an administrative exhaustion requirement dealing with these payments? Because I think opposing counsel has conceded there was never any Maryland state court proceeding brought to enforce a claim upon denial. Is there a requirement that that be done? A requirement, a state law does require an administrative exhaustion before taking it to state court. Here, I think there is an ability for the plaintiffs to seek prospective relief before the courts without necessarily having exhausted their state law remedies. And that would be their request for injunctive relief? Yes, that would be their request for injunctive relief. Do you differentiate between the injunctive relief that might be sought for the deceased recipients as opposed to those that are still living? I think the law does apply differently. I think for the deceased, well, we think they are both barred and prospective relief is available for neither one of the groups. For the deceased residents, it's a much clearer case because logically they cannot get prospective relief in terms of the relief requested here is related to the processing of their Medicaid eligibility applications. They have no way of benefiting from Medicaid eligibility going forward. Well, but you just said that you have an obligation to continue to process their applications after their death. Yes. So they would have that. Their gripe is that you're not processing applications correctly. This is an eligibility case. And they're saying that you didn't prosecute these applications for the deceased people and you ought to do that. Yes, that is what they claim. We disagree with those claims, but in terms of the relief that they could obtain from that, the only relief would be payment for retroactive services, services provided in the past. The relief would be, first of all, you determine eligibility and then you follow your regs to determine what gets paid. Isn't that right? Well, the relief would ultimately be a payment to the nursing facility for past services provided. Then how do you distinguish the Antracan case? That case involved expenditure of money ultimately. The Antracan case involved plaintiffs who, it was a class action case, and there were two categories of plaintiffs, one for which the department had not yet made Medicaid eligibility determinations and the other for which it was alleged that Medicaid had not, the applicants had received Medicaid eligibility determinations, but they were not getting services from Medicaid. So there were ongoing violations as that court found for both groups. And what they're saying here is the ongoing violation is that you won't process these applications for these poor deceased people. That's the same thing as the Antracan case, isn't it? At least some of the people in the Antracan case. No, I don't believe that's the case. I mean, I think your question is referring to the deceased individuals, and the deceased individuals, that relief is not what they request in their brief. It's not about determining Medicaid eligibility prospectively. It's about the nursing facilities trying to get paid for past services. Well, step one in that process is to determine eligibility, isn't it? Step one in that process would be to determine whether those plaintiffs are eligible. That's correct. So here, with respect to the deceased applicants, they have no ability to get prospective Medicaid eligibility, and the survivability of the claims that the cases that the plaintiffs rely on in their briefs. What about their claims with respect to a period of time before they died? That would be a monetary claim. Is that what you say the 11th Amendment applies to? Exactly. That would be a monetary claim that the Medicaid, state Medicaid program, would make for past services to the nursing facilities. The residents never receive money themselves. So it's your position then that sovereign immunity applies in that circumstance under the 11th Amendment? Absolutely. With respect to the Medicaid payments only? Absolutely, it applies in those circumstances, and it also applies to the plaintiffs that are still living. And those plaintiffs had Medicaid eligibility at the time the complaint was filed and have had Medicaid eligibility since then. There is no plausible prospective relief that those plaintiffs could receive. Was there any claim for the living applicants that they haven't been paid everything they're due? The complaint in the description of the parties says that those plaintiffs owe substantial sums to the nursing facilities. That's what this case is really about, is about the nursing facility's effort to get paid. So there is that claim. We have not tested that. I believe that that may be incorrect with respect to some of those residents, but there is that claim that those residents had services in the past that were not covered by Medicaid. This is for the folks that are still living? That's correct, and for the folks that are deceased. I believe they make that claim for both sets of individuals. On the ADA claims, are you going to talk about that? My colleague is going to discuss the ADA claims. I'll leave that alone. All right. Thank you very much. Thank you, Your Honor. Mr. Bouye, is that right? That's correct, Your Honor. Good morning, Your Honors. Michael Bouye, Assistant Attorney General for the Maryland Office of the Attorney General. With regard to the ADA and Rehabilitation Act claims, those were properly dismissed by the district court in the August 18, 2017 order. Again, on the 12B6 basis that those claims failed to state a claim. This court's decision in Walters v. McMahon is the controlling authority in this case. That case relies upon both Bell Atlantic and Iqbal for the standard, and that case does show at least a subtle change, if nothing else, in the standard for 12B6 complaint. The complaints and civil actions must be alleged with greater specificity than previously was required. Let me ask you the same question I ask opposing counsel. The district court appears to hold in the alternative with respect to the ADA claims that the plaintiffs did not have standing because they were not the real party in interest, and I did not see where the plaintiffs contested that ruling, but I also didn't see where you've raised that lack of standing as determinative in this case. I think that's a fair characterization of the briefing in this case, Your Honor. I don't think the plaintiffs raised it, and in response, I don't think the appellees have had anything to respond to with regard to standing, but it was not raised specifically by my client's standing. So do you waive that as a, I mean, ordinarily, if there's an alternative holding and a party doesn't contest it on appeal, the case is over. I don't know that the case would be over because, as Your Honor mentioned, that's a decision in the alternative. The district court did hold on 12B6 grounds that the ADA and Rehabilitation Act claims were not sufficiently pled. My point is if the district court made a determination that the plaintiffs did not have standing and then the plaintiffs as the appellants do not contest that, then that's a substantive basis for the district court's ruling that's uncontested on appeal, and ordinarily, that would end the case, but what I'm understanding from you is that you're not arguing that. Well, Your Honor, I think if they haven't raised it on appeal, then I think Your Honor would be right that they can't contest it at this point. They haven't raised it in their briefing. You didn't either. But if they haven't, it's their appeal, Your Honor. If they haven't challenged it, then I, you know, my contention would be that the district court's decision with regard to that issue isn't on appeal here. It should be left in place. What facts did they plead about the disability status, if any? Your Honor, with regard to disability, they didn't plead much with regard to the disabilities in this case. Did they plead enough? No, they certainly did not plead enough. Disability under the ADA, as adopted also by the Rehabilitation Act, has a statutorily defined meaning. Disability has to do with major life activities, an inability to perform major life activities, and they have not made those types of allegations in this case. There's no specific information in the complaint whatsoever about the limitations or medical conditions or what have you that these nursing facilities residents may have. In the Morningstar case, which is cited in our briefing, it's also cited in the district court's decision, it's a particularly useful case. The allegations there are very similar. They're markedly similar to the allegations of our complaint. Interestingly enough, that case was also pursued by the same law firm that represents the appellants here. In that case, the court found that the fact that a person was not afforded Medicaid benefits in and of itself does not plausibly suggest that it was because of a disability. That's all they've alleged here. They have not gone past that. The First Amendment complaint relies on nothing more than the fact that benefits and services were denied as support for those ADA and Rehabilitation Act claims. That doesn't provide the required causal connection that's required by the Third Element ADA claim, as the district court judge found. Even where the complaint alleges that the residents were treated differently than other applicants or recipients, it doesn't allege that that difference in treatment was because the residents had a disability and others did not. Well, the fact that this same law firm raised it really doesn't bear on the merits. No, I only... You keep raising that. I only point that out because... Are you trying to kind of get us excited about that? No, I'm not trying to get you excited about that, Your Honor. All I'm trying to do is say that if you look at the allegations of the complaint as they're laid out in that case, and you put them side to side with the complaint in this case, you're going to see a lot of similar language. So what's the relevance of that? The relevance of that is that the decision in that case found that an ADA claim had not been sufficiently pled, because again, all that they could plead in that case was that the individuals were not afforded Medicaid benefits. That in and of itself is not sufficient to plead an ADA or Rehabilitation Act claim under Element 3. That's a district court case or a court of appeals? It's a district court case by the Northern District of New York, Your Honor. Those district court cases are very persuasive. I can see why you would say that, Judge Gibney. And we certainly feel that the district court decision in this case was very well reasoned by Judge Bennett. At this point, I'd move on to the due process claims, if Your Honor... They had a right to a hearing in court, didn't they? That's about as much process as anybody's due, isn't it? They absolutely have a right through the process in Maryland, and I believe co-counsel referred to that process. If you refer to the Code of Maryland Regulations 10.01.04.02a, that provision sets forth before an administrative law judge, an applicant or recipient of Medicaid benefits, has the right to go forward and challenge the types of issues or determinations that the appellants are complaining of here. Has that happened in any of these cases? As Judge Bennett pointed out, it did happen in several of these cases, and their complaint actually admits that it did happen in several cases. Not in all cases. Not every one of these residents actually did pursue administrative appeals relief. It's not clear necessarily from the complaint why they didn't. I believe the appellants would argue it's because perhaps they didn't get notice or the notice was deficient. But the regulation that I just mentioned provides for the opportunity to challenge all of that in the administrative appeals process. Then if you're not satisfied with the result you get from the Office of Administrative Hearings in Maryland, you have the right under the Maryland Administrative Procedures Act to file a petition for judicial review to the circuit court in Maryland. You have the right to judicial review of the decision of the administrative body, and that review is plenary by the circuit court. They can decide whatever they believe should be decided based on the administrative record and order whatever relief is appropriate. So is it your position that the failure to do that is a bar to a 14th Amendment claim? The first bar to a 14th Amendment claim is the 11th Amendment sovereign immunity, and I should point that out first. As to all of the supposed application defects that they're talking about, those all concern applications that are stale, that are in the past. We now have all of the residents are either deceased or they're currently receiving benefits, as has been pointed out. Beyond that, the fact that they do have the right to administrative appeal, yes, that is a bar to a 14th Amendment claim. Again, there's no allegations in the complaint that the administrative procedures themselves, the review procedures weren't sufficient. They take issue with the application process. Well, you're not saying that exhaustion of remedies is required before you bring the 1983 case. What you're saying is that all the process in the world is available to these folks, so there's no due process claim. That's what I'm saying, Your Honor. It's also what Judge Bennett said correctly. The issue here is not exhaustion of remedies as the appellants have tried to characterize it, and that's how they read the order. The district court did not necessitate exhaustion. It's not our argument that exhaustion has to be necessitated. It has to be reached or attained. Instead, the district court held that there's no violation of procedural due process in this case where there are procedural safeguards in place, the ones that I've discussed, that allow the opportunity to appeal. For all of these reasons, Your Honor, I see I'm reaching the end of my time, but for all these reasons, the 11th Amendment sovereign immunity that my co-counsel argued about as to most of the Social Security Act-related Medicaid Act claims in this case, as well as the due process claims, which are barred by sovereign immunity, and also that the ADA and Rehabilitation Act claims are clearly barred by Rule 12B6 for not being sufficiently pled. The state requests that the appeal be dismissed and the district court decisions below be upheld. I thank you for your time, unless there's any further questions. Thank you very much, Ms. Watt. Thank you, Your Honors. Although the state argues that there is this increased pleading standard, under Swierkiewicz, there's still not a particularity requirement. They are not required to establish the prima facie nursing home residence, aren't required to establish prima facie case in their complaint. Under Tenth Circuit in Robertson, the court held that just pleading the diagnosis wasn't sufficient, that you need to establish the substantial interference. As I understand opposing counsel's argument, he's saying with regard to your Fourteenth Amendment claim that there's lots of due process available through the Maryland administrative process and the Maryland courts, and that acts in effect as a defense to a procedural due process claim. I would disagree, because the notices sent by the state, in effect, cause these plaintiffs to forfeit their appeal rights in reliance on the notices. The nursing home residents are told their applications will be kept open, and then when they do file their appeals later, their appeals are held untimely, because they elected to try to keep their applications open. There's never a notice sent saying, your application wasn't eligible to be kept open, or your application was denied. What they said was, you'll notice that your application is denied. We'll keep it open if you have some more stuff. Correct. But there was a denial. No question about that. But a notice that acts as both a request for additional information and a denial doesn't convey that this is a completed, closed thing. It certainly didn't tell them, if you elect to do this process and keep your application open, you will not have an appeal right, because it will be untimely. Well, so what they should have done was filed an appeal and sent in the additional information. But they had no way to know that they needed to do that. And there was communication with the state. I mean, if it said, if the document came in from the state and it said in there, your claim is denied, regardless of what else it said, it seems like that would put most people on notice their claim was denied and they should investigate whatever rights they have at that point. But again, we're talking about elderly, ill people, some people with mental disabilities, Alzheimer's. Well, we're really talking about the management of the nursing homes. You know, I understand that the defendant wants to characterize this as the nursing homes wanted to come in here and get money, but this claim is not about money to the nursing homes. This claim is about a failure of due process for these nursing home residents. The point is that the nursing home administrators could read that notice and say, oh, boy, we better appeal. And they should have. And if maybe... So that suggests that... That suggests that there's not a due process violation, what it suggests to me. Except that the notice is to the residents. The notice is to the applicants. There's not an obligation for the nursing home administration to be on top of that. There's, in this case, yes, these are residents of these nursing homes. Well, isn't that nursing home the assinee of these claimants? I'm sorry? Aren't they the assinee of these claimants? I mean, they wouldn't let him in the door otherwise. Unfortunately, that's not actually the case. Oftentimes a nursing home resident is admitted or gets into the nursing home and isn't necessarily already an assinee or doesn't already have Medicaid coverage or doesn't have a way to pay. Well, but somebody signed a form in this case saying that the nursing home could do this application. That is correct. The resident himself or herself during a period of competence were a family member, right? That is correct. So you all had the legal authority to go and do these applications and to receive the notice, right? The notice is statutorily required to go to the applicants. Well, okay. You all had the authority to receive those things, didn't you? Did you receive those notices? Did the home receive those notices? For two of the applications and for three of the applicants, the nursing home says no, they did not receive these notices. The remaining ones they say are confusing. If the notices have to be received by the nursing home, then the nursing home should be able to do this. Wait a minute, wait a minute. But you as the nursing home, except for those three, got all the rest of them? I'm sorry? Except for the three, you just mentioned the nursing homes got these notices for everybody else. They have confusing notices that offer two pathways. All right. Why don't we wrap up here? Your Honor, this case does not seek a monetary judgment. This seeks proper notice for the plaintiffs on those initial applications. Nowhere does it ask for a money judgment. Undershare, a motion to dismiss whether it's for lack of subject matter jurisdiction or for failure to plead all of the allegations. The complaint is to be construed in favor of the plaintiffs. That was not done here. Plaintiffs would ask that the orders dismissing the case be reversed and that the case be remanded to the district court so that the claimants' claims can be heard on the merits after adequate discovery. All right. Thank you very much. We'll come down and agree counsel and take a very short recess. This honorable court will take a brief recess.
judges: G. Steven Agee, Henry F. Floyd, John A. Gibney Jr.